UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

QUADIR ARMSTRONG,

**Plaintiff,**

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS; MARCUS O. HICKS, ESQ.,
in his official capacity as Commissioner of the
New Jersey Department of Corrections; GARY
LANIGAN., in his official capacity as
Commissioner of the New Jersey Department of
Corrections; WILLIE BONDS, in his official
capacity as Administrator of the New Jersey
Department of Corrections; JOHN POWELL,
in his official capacity as Administrator of the
New Jersey Department of Corrections; ERIN
NARDELLI, in her official capacity as
Administrator of the New Jersey Department of
Corrections; DERICK LOURY, in his official
capacity as Administrator of the New Jersey
Department of Corrections; OFFICER KYLE
R. BEATTIE individually and in his official
capacity; SERGEANT MICHAEL W. CHARD,
individually and in his official capacity;
OFFICER JEROME KING, individually and in
his official capacity; OFFICER ABRAHAM
GONZALEZ, individually and in his official
capacity; OFFICER EDWARD MARIN,
individually and in his official capacity;
LIEUTENANT JOHN DOE individually and in
his official capacity; JOHN DOES #s 1-10,

**Defendants.**

AMENDED COMPLAINT
AND JURY DEMAND

HONORABLE RENEE MARIE BUMB, USDJ

CASE NUMBER: 1:20−CV−05125−RMB−JS

1

1. This action is brought pursuant to the United State Constitution and 42 U.S.C. § 1983 and § 1988 (the Civil Rights Act of 1871) to redress deprivations of the civil rights of the Plaintiff, deprivations accomplished by acts and/or omissions of the Defendants and committed under color of law.

2. This court has jurisdiction over this action under the provisions of 28 U.S.C. §§ 1331, 1341 and 1343 because it is filed to obtain compensatory and punitive damages for the deprivation, under color of state law, of rights of citizens of the United States secured by the Constitution and federal law pursuant to 42 U.S.C. § 1983.

3. This action is brought pursuant to the Violations of the Prison Litigation Reform Act (PLRA).

4. This action is brought pursuant to Section 504 of the Rehabilitation of 1973 ("Section 504").

5. This action is brought pursuant to Title II of the Americans w/Disability Act ("ADA", Title II").

6. Venue is proper under 28 U.S.C. § 1391(e)(2) because the Defendants reside in this Judicial District and the events giving rise to this action also occurred in this Judicial District.

## PARTIES

7. Plaintiff, Quadir Armstrong, is a citizen of the United States and currently resides in Union County. At all times relevant to this complaint, Mr. Armstrong was a prisoner of the State of New Jersey, housed by the New Jersey Department of Corrections at South Woods State Prison, Southern State Prison and Mid-State Correctional Facility, Bo Robinson Assessment Center/Halfway House, Yardsville and Trenton State Prison.

8.   Defendant, the New Jersey Department of Corrections ("NJDOC"), is a correction agency under the administration of the Governor of New Jersey.  NJDOC is comprised of 12 correctional facilities and 14 halfway houses.  NJDOC is under a continuing duty to execute legally its correctional activities in a manner to preserve the rights, privileges, and immunities guaranteed and secured by the laws and Constitutions of the United States and the State of New Jersey.

9.   Upon information and belief, Defendants, GARY LANIGAN, WILLIE BONDS, JOHN POWELL, ERIN NARDELLI, DERICK LOURY, OFFICER KYLE  R. BEATTIE, OFFICER KING, SERGEANT MICHAEL W. CHARD, OFFICER JEROME KING, OFFICER ABRAHAM GONZALEZ, OFFICER EDWARD MARIN, LIEUTENANT, John Does #1-10 (hereafter, "John Does #1-10" or collectively "Defendant Officers") are adult citizens of New Jersey.  At all times material hereto, these Defendant Officers were managers, supervisors, and or officers of South Woods State Prison, Midstate Prison and/or Southern State Prison, who were acting under the color of state law in their positions as correctional officers, managers, and supervisors acting individually and in their official capacities as employees and or agents of New Jersey Department of Corrections.  These Defendant Officers are being sued individually, as well as in their official capacities as supervisors, managers, and or correctional officers for the New Jersey Department of Corrections working at South Woods State Prison, Midstate Prison, Trenton State and/or Southern State Prison.

10.  Upon information and belief Defendant JAMEL ALLEN is an adult citizen of the State of New Jersey.

**FACTUAL ALLEGATIONS**

3

Plaintiff hereby incorporates each and every paragraph contained in this Complaint by reference, and makes said paragraphs a part hereof, as if fully sets forth herein:

11.  Mr. Quadir Armstrong, Plaintiff, was incarcerated in the New Jersey Department of Corrections beginning December 9, 2016.

12.  Mr. Armstrong during his entire incarceration was a qualified individual with a disability.  Mr. Armstrong is a paraplegic and has no use of his legs.

13.  Mr. Armstrong has nerve pain due to Spinal Cord Damage.  When in pain, at times he has had to wait up to 3 days while in order to obtain additional medication despite using the proper notification procedure.

14.  Mr. Armstrong is in need of assistance to transfer to the bed, use the toilet, go up and down steps, and is unable to use a standing shower.  When he is not in his wheelchair, Mr. Armstrong is only able to crawl on the floor.

15.  While at Mid-State, Mr. Armstrong's family called the facility because he was unable to eat at the table.  The staff then was forced to create space for him.  Still he was not permitted to attend the library or school because there were no elevators.  On one occasion inmates had to carry him.

16.  On one occasion, Mr. Armstrong was attacked, hog tied, and thrown in a cell where he fell and split open his knees and feet by Defendant Officers simply for having a bladder disorder.

17.  In early April 2018, Mr. Armstrong, was experiencing depression due to the loss of a loved-one, and was grieving and in pain.  Mr. Armstrong took an extra nerve pill due to pain and depression.

18.  Defendant officers placed him on constant watch and labeled him as someone experiencing a mental breakdown.  Mr. Armstrong was placed into a cell without his wheelchair,

4

slept on the floor for two days, slid across the floor for movement, and used a milk carton to release himself.  Only a mattress on the floor, a toilet and sink were in the room.

19.  On or about April 20, 2018, inmate Jamel Allen, assaulted his cellmate at South Woods State Prison. Defendant Officers needed to utilize pepper spray to subdue Allen. Mr. Allen discussed killing and "f-ing up" others and fearing that "Muslims and the Grape Street Crips" were out to get him.  This was witnessed by several inmates, including Plaintiff, several officers, and Defendant Officers.

20.  Mr. Armstrong told Officer Beattie that he was afraid of Mr. Allen and that Mr. Allen should be kept away from Mr. Armstrong.

21.  Defendant officers were aware that Mr. Armstrong was in a wheelchair and was a Muslim.  However, Officer Beattie still placed Mr. Allen in the cell with Mr. Armstrong.

22.  When Mr. Armstrong told Officer Beattie and Sergeant Chard that he was afraid of Mr. Allen, Defendants told Mr. Armstrong that Defendant Allen was "just" having his moments and that he was losing his mind when he first came as a result of possibly using drugs.  Officer Beattie and Sergeant Chard failed to place Mr. Allen in a proper place knowing his mental health condition and propensity for violence.  Instead Defendants placed Mr. Allen in the same cell as Mr. Armstrong.

23.  Officer Beattie instigated, encouraged fights and wanted to see who would get beat up on several different occasions.  Officer Beattie indicated to Mr. Armstrong on multiple occasions that he thought he was tough and purposely placed Jamel Allen in his cell with him.  Defendant Officers were aware of Mr. Allen's violent history as Mr. Allen just beat up another inmate a few days prior.

24.  On or about April 23, 2018, at approximately 9:00 p.m., Quadir Armstrong, a paraplegic, was attacked and beaten by inmate Jamal Allen in the cell they shared at South Woods State Prison.   The attack was unprovoked and lasted a significant amount of time.

25.  Mr. Allen walked up behind Mr. Armstrong and hit him multiple times.  This caused Mr. Armstrong to fall out of his wheelchair.  Mr. Allen punched, kicked and stomped Mr. Armstrong while Mr. Armstrong laid on the floor helpless, screaming for help and trying to protect his head.  As a result of the attack, Mr. Armstrong inadvertently urinated on himself. Other inmates screamed and yelled for correction officers to come.  However, no officers came in a reasonable amount of time.

26.  Defendant Officers did not conduct the proper rounds at the time Mr. Allen assaulted Mr. Armstrong, and failed to discover the assault in a timely fashion.

27.  When Defendant Officers arrived at Mr. Armstrong's cell while he was being assaulted, Defendant Officers were not properly prepared and/or trained to stop the assault.

28.  Defendant Officers entered the cell, put Mr. Armstrong back into his wheelchair and attempted to speak to him. As per witnesses, Mr. Armstrong could not remember his birthday, where he was and thought the year was 2009.  Mr. Armstrong was bruised up as reported by witnesses.

29.  Prison staff took Mr. Armstrong to the prison emergency room.  While at the Prison ECU, Mr. Armstrong's left eye was not responding when evaluated by medical staff and he was unable to properly respond to questions when asked. He was placed in a neck brace and transported to Cooper Hospital by ambulance.

6

30.  Hospital staff had to cut Mr. Armstrong's clothes in order to identify and properly treat his injuries as he had cuts and bruises all over his body from the attack.  Mr. Armstrong had a CAT scan at Cooper Hospital, a concussion, and was given oxygen to assist which his breathing.

31.  After Mr. Armstrong was released from the Cooper Trauma Unit, he was taken back to the South Woods ECU.  Mr. Armstrong is unaware of any investigations being conducted. During his time in the ECU, a thorough and complete investigation of the attack was never conducted.  Pictures of his injuries were never taken and his interview with the special unit was not recorded that he is aware of.  Protocol was not followed.

32.  Mr. Armstrong, while in South Woods State Prison, sought counsel in May 2018. After his attorney visited Mr. Armstrong, he was identified as a target by Officer Beattie.  He heard jokes about wheelchairs and the fact that he got beat up.

33.  While in South Woods, Mr. Armstrong was experiencing significant bouts of depression and feared for his life.  Mr. Armstrong requested that he be placed in a handicap cell or the medical unit for his safety.  The request was denied.  Mr. Armstrong wrote up Officer Marin and/or John Doe #1-10 for not allowing him to go into a handicap cell.

34.  Handicap cells have more space making it easier to get onto a toilet and is a single person cell.  Mental health residents are also usually watched by an officer outside of their door. Instead of this happening, Mr. Armstrong was double bunked. Doing so, delegated that responsibility to another inmate to secure his safety.

35.  Mr. Armstrong placed his attorney's name and contact number on his call list.  After her visit, his calls to his attorney, and a Tort Claims Notice being filed, Mr. Armstrong suffered additional unfair treatment and feared for his life.  Mr. Armstrong was tormented after that. Despite believing that he won all of his internal disciplinary charges, Mr. Armstrong sent a

message to his attorney that she should not file anything else but should wait until he is home because of ongoing mal-treatment and retaliation by Defendant Officers.  Throughout these ordeals, Mr. Armstrong's attorney's phone number was restricted.  Mr. Armstrong put in multiple slips regarding the restriction.  Mr. Armstrong was told that he had to put in a phone discrepancy.  He did.  However, his attorney's phone number was still restricted.  This left Mr. Armstrong in a position of being unable to communicate with legal counsel in any meaningful way.

36.   Mr. Armstrong utilized all internal complaints that were offered to him.  Defendant Officers individually and together purposely conspired, laughed, and humiliated him.

37.   While in South Woods State Prison Camp, Mr. Armstrong was told he was not on the list to go to class.  He was admonished for not going to class by Ms. Durant. However, he was accused of misbehaving towards Ms. Durant which resulted in disciplinary proceedings against Plaintiff.

38.   While at South Woods State Prison, Mr. Armstrong did not have physical therapy for approximately two years.  This exasperated his depression.

39.   Mr. Armstrong was told by "Ms. Angie" that she would give him braces.  After a month or two she told him that if the CO's took his braces and or tablet there was nothing she could do.  Mr. Armstrong was not given physical therapy since June 2017.  Ms. Angie indicated that he could no longer do physical therapy because he was supposed to have braces.  Someone took his braces.  She also indicated to him that there was no hope for him to walk again.  Despite this, Mr. Armstrong desired to continue with physical therapy.

40.   Traditionally, inmates attend therapy 2-3 times a week for an hour for as long as needed.  Major Tomlin indicated to Mr. Armstrong's mother that he would have his tablet within two weeks.  Two weeks came.  However, Mr. Armstrong did not have his tablet.

41.   During an incident in June of 2018, officers arrived at Mr. Armstrong's cell because his cellmate complained of chest pains.  While there, officers accused Mr. Armstrong of abusing his medication.  Mr. Armstrong was taken to the ECU, placed on constant watch, forced to take a urine test and had his wheelchair taken away.  As a result, Mr. Armstrong had to slide on the bathroom floor, which was covered in half mopped urine and feces, and was given a milk carton to use as a toilet. Despite the corrections officers insisting they believed the client had taken Suboxone, Mr. Armstrong was never given the lab results of his urine test and was never charged.

42.   Despite numerous complaints and complying with internal procedures, Officer Gonzalez, of the SID (Super Investigation Department) failed to investigate anything and/or report anything to Mr. Armstrong.

43.   Mr. Armstrong was transported to Southern State.  When it was time to go to the Assessment Center, Officers turned him around and told him that the bus was not wheelchair accessible.  Mr. Armstrong was brought out with approximately 30-40 other people going to the halfway house.  When Mr. Armstrong got out of the building to get onto the bus, they told him that the bus was not wheelchair accessible.  Mr. Armstrong was humiliated once again. On or around October 24, 2019 and after the assault by Defendant Allen Mr. Armstrong was transferred to Southern State Prison.  While there, Mr. Armstrong came into contact with Officer Chard once again.  Mr. Armstrong overheard Officer Chard indicate to other officers that Mr.

Armstrong was the reason why he was moved from South Woods and that he's a problem. Mr. Armstrong wrote grievance slips against Defendant Officer(s).

44.  When Mr. Armstrong was scheduled to go to the halfway house, he was told by Ms. Nardelli that the bus was not wheelchair accessible.  Mr. Armstrong had to wait two weeks to go to the half-way house.  Mr. Armstrong was humiliated once again.

45.  On or about July 30, 2020 at Trenton State Prison, Mr. Armstrong was placed in a cell that was not wheel chair accessible.  In an attempt to leave the cell, he fell and bruised his ribs. Trenton State Prison has no wheelchair accessible cells.

## CAUSES OF ACTION

### COUNT I

**EIGHTH AMENDMENT FAILURE TO PROTECT IN VIOLATION OF THE 42 U.S.C. §1983**

Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof, as if fully set forth herein.

46.  Pursuant to settled United States Supreme Court authority, and in accordance with the Eighth Amendment, Plaintiff is entitled to be free from a known and unreasonable risk of serious harm while in the custody of the State.

47.  Defendant Officers and John Does 1-6 committed the above-referenced actions and/or omissions under the color of law; and, by virtue of their authority as law-enforcement officers for New Jersey Department of Corrections, they substantially deprived Mr. Armstrong of his clearly established rights, privileges, and immunities guaranteed to him as a United States citizen, in violation of 42 U.S.C. §1983.  Further, Defendant Officers violated Mr. Armstrong's rights, under the Fourth, Eleventh, Eighth, and Fourteenth Amendments to the United States Constitution, by depriving him of, including but not limited to, the following:

10

    a.   freedom from unreasonable and excessive force;

    b.   freedom from deprivation of liberty and property without due process of law;

    c.   freedom from summary punishment;

    d.   freedom from state created danger;

    e.   freedom from arbitrary government activity which shocks the conscience of society.

48.  As a direct and proximate result of the acts and omissions of Defendant Officers Mr. Armstrong's constitutional rights were violated resulting in physical, mental and emotional trauma.

49.  In violation of Plaintiff's Eighth Amendment rights, Defendant Officers knew or should have known and consciously disregarded the substantial risk that Plaintiff would be injured by Mr. Allen while in custody at South Woods State Prison.  "The Defendants" failed to employ adequate classification and screening procedures for assigning inmates to cells, despite the significant and obvious risk of serious harm that Mr. Allen would subject to Mr. Armstrong.

50.  In this manner, Mr. Armstrong was unlawfully subjected to an unreasonable risk of bodily injury.  The resulting harm caused Mr. Armstrong's suffering and hospitalization.

## COUNT II

### VIOLATION OF SECTION OF 504 OF THE REHABILITATION OF 1973 ("SECTION 504")

Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof, as if fully set forth herein.

51.  Mr. Armstrong is an individual with a disability.

52.  Mr. Armstrong is otherwise qualified for the programs, activities, and services from which he was excluded from participating in or availing himself.

53.  Mr. Armstrong was denied benefits and was discriminated against solely because of his disability.

54.  The program activity and/or prison receives federal financial assistance/funding.

## COUNT III

### VIOLATION OF TITLE 2 OF THE AMERICANS WITH DISABILITIES ACT ("ADA, TITLE II)

Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof, as if fully set forth herein.

55.  Mr. Armstrong is qualified to participate in or receive the benefit of the particular service, program, or activity at the prison(s) where he was housed.

56.  Mr. Armstrong was excluded from participation in/or denied the benefits of the service, program, or activity at the prison(s) where he was housed or was discriminated against in some other way; and this exclusion, denial of benefits, or discrimination was because of his disability.

57.  The New Jersey Department of Corrections does/did not have proper handicap accessible equipment to assist Mr. Armstrong in the facilities that he was placed in including but not limited to, ramps, shower chairs, and handicap bars.  On the date of the assault my Mr. Allen, incident Mr. Armstrong did not have a handicap railing in his room.

58.  Mr. Armstrong, while in prison at Midstate, was not afforded the opportunity to go to the library or school because there were no elevators.  On one occasion another inmate came to talk to him to discuss his legal issues which afforded him no confidentiality; there is no cafeteria accessibility, and Mr. Armstrong has been deprived of the ability to go to the yard.  Further, South Woods Prisons are not equipped with handicap showers as the showers were too high for his reach.

## COUNT IV

### STATE LAW TORTS AGAINST DEFENDANTS

Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof, as if fully set forth herein.

59.  Defendant Officers' acts, omissions, and conduct constitute a violation of due process, assault, battery, negligence, retaliation, and spoliation of evidence, intentional infliction of emotional distress, and harassment.

60.  As a direct result of the aforementioned acts and omissions of Defendants, John Does #1-10 and/or Defendant Officers violated Mr. Armstrong's constitutional rights and rights under the Americans with Disabilities Act.

## COUNT V

### FEDERAL CONSTITUTIONAL VIOLATIONS AGAINST THE NEW JERSEY DEPARTMENT OF CORRECTIONS

**- Failure to Train and Supervise-**
**- Implementation of Policies That Violate Constitutional Rights-**

Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof, as if fully set forth herein.

61.  Defendants, are under a duty to supervise the members of the New Jersey Department of Corrections and to ensure that activities are executed in a lawful manner, which preserves the rights, privileges, and immunities of the citizens of New Jersey, guaranteed to them by the United States Constitution and the Constitution of the State of New Jersey.

62.  The actions of the Defendants were unjustified, unreasonable, unconstitutional, thereby depriving Mr. Armstrong of his constitutional rights, in violation of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

13

63.  The New Jersey Department of Corrections is directly liable, due to its policy statements, ordinances, regulations, and/or decisions formally adopted and promulgated by Department of Corrections which were in effect at the time of this incident, including the following:

a. The New Jersey Department of Corrections formally have adopted policies and standard- operating procedures designed to prevent formal complaints from being filed with the Internal Affairs Unit, thus, favoring officers' statements over the statements of citizens who make formal complaints, resulting in intimidation of inmates and the exoneration of officers for unconstitutional behavior, which creates an atmosphere where unconstitutional behavior is tolerated, condoned, and/or ratified by the Department of Corrections.

b. The New Jersey Department of Corrections formally have adopted a policy of housing inmates with disabilities without ensuring the proper safeguards that would ensure their rights under the United States Constitution, the ADA, Section 504, of the Rehabilitation Act of 1973, as well as its own handbooks and policies and the allowing Corrections Officers to conduct arrests with the use of illegal and excessive force, which creates an atmosphere where unconstitutional behavior by Corrections Officers is tolerated, condoned, and/or ratified by the prisons.  Said actions further create an atmosphere of illegal and unconstitutional behavior to the detriment of those incarcerated in the State of New Jersey.

64.  The New Jersey Department of Corrections is liable to the plaintiff, due to following policies, practices, or customs, which were in place at the time of these incidents:

14

a. The New Jersey Department of Corrections has an ongoing practice and custom of allowing Corrections Officers to employ excessive force when coming into contact with inmates. This creates an atmosphere of unconstitutional behavior in deliberate indifference and reckless disregard for the safety and welfare of the citizens incarcerated in New Jersey State Prisons, which included Mr. Armstrong.

b. The New Jersey Department of Corrections has an ongoing practice and custom of failing to follow the ADA guidelines with regard to handicap accommodations and allowing Corrections Officers to ignore the needs of the disabled population thereby violating the safeguards put into place by our legislative body. This creates an atmosphere of unconstitutional behavior in deliberate indifference and reckless disregard for the safety and welfare of the citizens of the State of New Jersey, including Mr. Armstrong.

c. The New Jersey Department of Corrections has an ongoing practice and custom of failing to respond to "help slips" in a reasonable amount of time. This creates an atmosphere of unconstitutional behavior in deliberate indifference and reckless disregard for the safety of those incarcerated by the State of New Jersey, more specifically in South Woods Prison and Southern State Prison. Defendants are liable to the plaintiff under *Monell v. Department of Social Services of the City of New York,*[1] due to the following policies and customs of inadequate training, supervision, discipline, screening or hiring, which were in place at the time of this incident;

d. The New Jersey Department of Corrections failed to adequately train and supervise corrections officers with regard to proper procedures and techniques, use of force, probable-cause determinations, and internal-affairs procedures. This creates an atmosphere of unconstitutional behavior in deliberate indifference and reckless disregard

---

[1] 436 U S 658 (1978)

15

for the safety and welfare of the inmates of those incarcerated in the state of New Jersey,

including Mr. Armstrong;

e.   The New Jersey Department of Corrections, failed to adequately monitor and evaluate

Correction Officers' performance as well as their compliance with the laws, policies, and

practices regarding proper procedures and techniques, use of force, probable-cause

determinations and internal-affairs procedures.  This creates an atmosphere of

unconstitutional behavior in deliberate indifference and reckless disregard for the safety

and welfare of those incarcerated in the State of New Jersey, including Mr. Armstrong.

65.   Further, the New Jersey Department of Corrections is liable for the actions of the

Defendant(s), Officers and John Does #1-10 under the doctrines of vicarious liability, respondent

superior, agency, and contract law, as a result of its duty to employ officers who comply with

federal and state law. As a direct consequence of New Jersey Department of Correction's

foregoing policies, customs, and practices, the violation of the constitutional rights of citizens,

including Mr. Armstrong, was certain to occur.

## COUNT VI

## CONSPIRACTY TO VIOLATE CIVIL RIGHTS

Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint and by

reference makes said paragraphs a part hereof, as if fully set forth herein.

66.   Defendant Officers conspired to violate the civil rights of the plaintiff by targeting Mr.

Armstrong, subjecting him to unreasonable and unconstitutional force, and by failing to protect

his constitutional rights.

67.   The Defendant Officers, acting in concert, committed acts that were collectively a clear

violation of Mr. Armstrong's civil rights.

## COUNT VII

## VIOLATION OF RIGHTS TO DUE PROCESS OF LAW

Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof, as if fully set forth herein.

## COUNT VIII

## PUNITIVE DAMAGES AGAINST DEFENDANT OFFICERS AND JOHN DOES #1-6

Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof, as if fully set forth herein.

68.  The actions and omissions of Defendant Officers John Does #1-6 were unlawful, unconstitutional and were performed maliciously, recklessly, intentionally, willfully, and in such a manner, which warrants Mr. Armstrong's entitlement to an award of punitive damages against all defendants.

## DAMAGES

Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof, as if fully set forth herein.

69.  As a direct and proximate result of defendants' actions and omissions outlined herein, Mr. Armstrong was beaten, violated and humiliated.  Further, Mr. Armstrong suffered physical, emotional and psychological abuse.  The damages for which the plaintiff seeks compensation from the defendants, both jointly and severally, include, but are not limited to, the following:

 a. Past, present, and future emotional pain and suffering;

 b. Attorney's fees, pursuant to 42 U.S.C. §1983;

 c. Punitive damages against the defendants; and,

   d.  All such relief that the plaintiff may be entitled to under the premises.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment against the defendants for compensatory damages of a reasonable amount, or in the alternative, in an amount that a jury deems reasonable and for all such further relief, both general and specific, to which the plaintiff may be entitled to under the premises, including punitive damages which is appropriate to punish the individual defendants.

## JURY DEMAND

70.  The plaintiff respectfully demands a jury to try each count and each defendant in this matter.

Respectfully submitted,

/s/ *Andaiye Al-Uqdah* /s/

Andaiye Al-Uqdah, Esq.
Attorney ID#: 020542002
Attorney for Plaintiff
106 N. Warwick Road
Lawnside, NJ  08045
Telephone:  856.455.6677
Facsimile: (856) 282-9008
Email: aa@aluqdahlaw.com